391 S.E.2d 379

**Donald E. O'CONNOR**

v.

**GCC BEVERAGES, INC., d/b/a Pepsi–Cola Bottlers of Charleston, Mike Farley and Mike Anderson.**

**No. 19086.**

Supreme Court of Appeals of West Virginia.

March 23, 1990.

Marvin W. Masters, Masters & Taylor, L.C., Charleston, for Donald E. O'Connor.

Gene W. Bailey, II, Jackson & Kelly, Charleston, for GCC Beverages, Inc.

William E. Mohler, Charleston, for Mike Farley and Mark Anderson.

## PER CURIAM:

This case is before this Court upon an appeal from a final order of the Circuit Court of Kanawha County dated November 1, 1988. In such final order, the circuit court granted the respondent's motion to compel enforcement of a settlement agreement. The petitioner contends that he has been aggrieved by such order because no agreement was reached between the parties involved. We find that a settlement agreement was not reached and we therefore reverse the order of the circuit court.

Donald O'Connor filed suit in 1983 against his employer, GCC Beverages, Inc., and two of his supervisors, Mike Farley and Mark Anderson. The petitioner alleged in the underlying civil action that the defendants below had retaliated against him for filing a workers' compensation claim.[1] Settlement discussions had been ongoing for at least a month prior to the meeting and discussions which occurred on October 23, 1986. Testimony taken at an evidentiary hearing held before Judge Canady on February 23, 1987, and written communications exchanged between the parties, revealed the following: On the morning of October 23, 1986, Barbara Keefer, counsel for the petitioner, met with Cheryl Wolfe, counsel for respondent GCC Beverages, to discuss a possible settlement of this matter. The petitioner was also in the office premises, and Ms. Keefer would periodically consult with him to ascertain his opinion on the specifics of the negotiations.[2] Several monetary and non-monetary items were discussed at this meeting, among those being the dollar amount of

the settlement, the ongoing Workers' Compensation proceeding, pending grievances with petitioner's union, confidentiality provisions of the settlement, and the sealing of petitioner's employment file.

At the end of this meeting, no agreement had been reached. During the course of the day, counsel for both sides continued to negotiate by telephone. At the end of the day, Ms. Wolfe testified that Ms. Keefer called her and said "So, I guess you've got a deal." Ms. Keefer testified she did not recall saying those exact words, but did not actually dispute that she said them. Counsel then discussed who would take responsibility for preparing the settlement agreement, and Ms. Keefer suggested that she prepare the necessary documents since her schedule at that time was not as hectic as Ms. Wolfe's.

On the same day, Ms. Wolfe wrote a letter to Ms. Keefer in which she summarized what she believed the terms of the agreement to be. Ms. Wolfe concluded this letter by asking Ms. Keefer to contact her immediately if the letter was defective in its portrayal of the representation of their proposed agreement. On October 31, 1986, Ms. Keefer wrote to Ms. Wolfe and enclosed the settlement agreement that she believed represented the culmination of their negotiations. She included in this agreement two provisions that were not contained in Ms. Wolfe's October 23 letter, due to the fact that she and the petitioner believed these provisions had been part of the earlier negotiations.

On November 7, 1986, Ms. Wolfe replied to the October 31 letter and included a revised copy of the settlement agreement. She informed Ms. Keefer that she had "revised" the agreement "somewhat", and that she suggested a further "deletion" of another provision. On November 25, 1986, Ms. Wolfe wrote to Ms. Keefer again, informing her that the settlement agreement

1. The petitioner alleged in this suit that GCC habitually retaliated against its employees who filed workers' compensation claims by opposing awards and medical treatment unlawfully, while simultaneously opposing the worker's return to the job. Petitioner complained that re-

spondents' actions caused him economic, physical, and emotional damage.

2. Mike Farley and Mark Anderson were not present at this meeting and did not participate in the settlement negotiations.

enclosed was the one that they proposed to execute. She additionally informed Ms. Keefer that she would check with her early the following week, "to make sure that all outstanding issues have been settled ..."

On December 4, 1986, Ms. Wolfe wrote Ms. Keefer to inform her that Mike Farley and Mark Anderson had been inadvertently left out of the release, and that she was thus sending a revised release including them. Ms. Keefer wrote Ms. Wolfe on December 9, 1986, and enclosed another revised draft of the agreement and releases. These updated drafts reflected changes that were requested to be made by the petitioner. Ms. Wolfe replied to this latest development by informing Ms. Keefer in her letter dated January 5, 1987, that the petitioner could not "arbitrarily alter nor renege on" the agreement that presently existed between them. Ms. Wolfe said that "the fact that minor provisions of the settlement documents have not been agreed upon and that the settlement documents have not been executed does not mean that the settlement is one which is not enforceable in court." She proceeded to list once again the provisions from her October 23, 1986 letter, standing on those provisions as an accurate representation of the agreement.

On November 14, 1987, Ms. Keefer informed Ms. Wolfe by letter that it was the petitioner's "position that there was no agreement between the parties until *all* matters were reduced to writing, *all* language agreed upon by the parties and all parties had signed such document. The fact that numerous drafts have passed back and forth, with language changes being made by both sides, is evidence of this."

On February 2, 1987, GCC Beverages filed a motion in the Kanawha County Circuit Court to compel enforcement of the settlement agreement. An evidentiary hearing was held before Judge Herman G. Canady, Jr. on February 23, 1987. Judge Canady granted GCC Beverages' motion to enforce the settlement. In his June 17, 1988 memorandum of opinion, Judge Canady set forth the reasons for granting the respondent's motion.[3] A final order was entered by Judge Canady on November 7, 1988.

It is well-understood that "[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties." 15A C.J.S. *Compromise & Settlement* § 7(1) (1967). We find that a definite meeting of the minds between the parties was lacking in the case before us today.

When the proposed agreement was reached on the afternoon of October 23, 1986, the counsel in this case were conversing on the telephone. Each lawyer appears from the record to have believed that a settlement had been reached, and that the parties would produce a written agreement memorializing it. However, Ms. Wolfe's letter of October 23 and Ms. Keefer's written response of October 31 clearly reflect that their understandings of the "agreement" differed. The fact that Ms. Wolfe responded to the written settlement agreement sent by Ms. Keefer by revising it further and suggesting a further deletion would seem to reflect that the lawyers essentially embarked upon re-negotiations.

At the hearing below, the petitioner testified that it was his understanding that any agreement had to be in writing. Ms. Keefer shared this understanding according to her January 14, 1987 letter, which informed Ms. Wolfe that it was her and her client's understanding that no agreement existed

---

**3.** The reasons given by Judge Canady were that the law favors resolution of controversy by settlement; that settlement agreements need not be in writing to be binding; that there was no express condition that there was to be a written settlement document; petitioner's presence at the October 23 negotiations and petitioner's counsel preparing a written document of October 31 which coincided with the terms of negotiations between counsel established that the reduction of the agreement to writing was merely an effort to memorialize the agreement that had been reached on October 23; petitioner's testimony that he believed the agreement had to be in writing was not controlling; the fact that matters remained to be accomplished in the future did not obviate creation of a contract.

until a written agreement was reached that satisfied both sides. Ms. Wolfe also indicated this belief in her testimony at the evidentiary hearing before Judge Canady on February 23, 1988:

> "Q: And you knew that a written agreement had to be sufficient to satisfy those things that he felt that he was agreeing to on October 23, 1986, the same as your client had to do the same thing, isn't that true?
>
> A: I suppose so, yes."

In Syllabus Point 1 of *Blair v. Dickinson*, 133 W.Va. 38, 54 S.E.2d 828 (1949), we held that

> [w]here, from all the evidence and circumstances of the case, it appears that the parties to an agreement being negotiated between them intend that, as a condition precedent to its becoming binding upon them, it should be reduced to writing and signed by the parties, an oral agreement, though it covers all the terms of the proposed agreement, is not binding on the parties, until it is reduced to writing, and has been signed by all the parties thereto.

We find that even though an agreement may have been tentatively reached during the telephone conversation between Ms. Wolfe and Ms. Keefer on October 23, 1986, the letters and proposed written settlement agreements that passed from one party to the other after that conversation evidence that there was no true meeting of the minds on the day in question. Furthermore, the record indicates that the parties believed that a written agreement satisfactory to each party was necessary before this matter was finally settled.

We therefore find that there was no settlement entered into between the petitioner and the respondents on October 23, 1986. We therefore reverse the decision of the Kanawha County Circuit Court to enforce the settlement agreement between the parties.

Reversed.