399 S.E.2d 60

**Donald G. HUMPHREYS and Judy C. Humphreys**

**v.**

**CHRYSLER MOTORS CORPORATION; Capitol Chrysler–Plymouth–Yugo, Inc.; and Jamie Fuentes.**

**No. 19626.**

Supreme Court of Appeals of West Virginia.

Nov. 13, 1990.

Leo Catsonis, Charleston, for Donald G. Humphreys, Judy C. Humphreys.

David K. Schwirian, Pauley, Curry, Sturgeon & Vanderford, Charleston, for Chrysler Motors Corp.

PER CURIAM:

Donald G. and Judy C. Humphreys appeal the dismissal of the suit they instituted against Chrysler Motors Corporation, the successor in interest to Chrysler Corporation, Capitol Chrysler–Plymouth–Yugo, Inc., the successor in interest to Capitol Chrysler–Plymouth, Inc. and Jamie Fuentes (hereinafter collectively, Chrysler).

The Circuit Court of Kanawha County determined that the suit should be dismissed because the parties had reached a compromise and settled the suit. Mr. and Mrs. Humphreys seek reinstatement of their suit maintaining that no settlement was reached because their lawyer lacked authority to compromise their claim. We find that no settlement was reached and, therefore, reverse the circuit court.

On September 29, 1987, Mr. and Mrs. Humphreys instituted a civil action against Chrysler alleging that the 1985 Chrysler Le Baron they purchased from Chrysler as a new vehicle was defective and had undergone substantial but incomplete repairs. Alleging fraud and concealment, Mr. and Mrs. Humphreys sought compensatory and punitive damages.[1]

In the Fall of 1988, Phil Stowers, Mr. and Mrs. Humphreys' lawyer, proposed a settlement to Mr. and Mrs. Humphreys, in which Chrysler would buy back the bank note still owed for the car. Mrs. Humphreys testified that at that time the outstanding principal was $6,800.[2] Both Mr. and Mrs. Humphreys agreed to this settlement in part because they felt that paying that amount of money "might make them [Chrysler] think twice before they went ahead with something like this again." Chrysler rejected the offer.

When Mr. Stowers told Mr. and Mrs. Humphreys that the offer was rejected, Mrs. Humphreys said, "[G]ood, because my husband ... didn't want this settlement." No other settlement offers were discussed, and Mr. Stowers agreed to pursue the original suit. However, unknown to Mr. and Mrs. Humphreys, Mr. Stowers continued to seek a settlement. Mr. Stowers testified that he lacked his clients' authority to settle the case but thought he could persuade Mr. and Mrs. Humphreys to accept a settlement.[3]

In December 1988, Mr. Stowers and Chrysler reached a settlement, in which Mr. and Mrs. Humphreys would discharge the suit and Chrysler would pay off the bank car note and would pay an additional $100 to Mr. and Mrs. Humphreys.[4] Mr. and Mrs. Humphreys rejected the settlement because they felt Chrysler was not adequately punished for fraud and they received no funds for their extended warranty claim.

On January 18, 1989, Chrysler filed a motion to dismiss and to compel Mr. and Mrs. Humphreys to sign a release. After a hearing on January 19, 1989, the circuit court ruled that a binding settlement had been made by Mr. Stowers, and, thereafter on July 12, 1989, appointed a commissioner to sign the release. On August 22, 1989, a dismissal order was entered. Mr. and Mrs. Humphreys appealed to this Court alleging they did not approve the settlement and did not give their lawyer the authority to approve the settlement.

I

In Syllabus Point 5, *Dwight v. Hazlett*, 107 W.Va. 192, 147 S.E. 877 (1929), we stated:

> be provided [sic] [approved] later by my clients with counsel trying to reach what I believed to be a fair and worthy settlement in this case ...
>
> They notified me after the first settlement when these terms had been rejected that they weren't happy with that type of settlement because they didn't receive any money for the fraud.

1. The complaint sought damages in the amount of $14,000 or, in the alternative, rescindment of the car purchase with a refund of $3,000. In addition the Humphreys demanded $25,000 in punitive damages.

2. At the time of this offer, Chrysler believed the cost of settlement to be about $3,000 or $4,000.

3. At a hearing on January 19, 1989, Mr. Stowers testified:

> Since it [the settlement] was rejected, my clients were telling me that they thought over that settlement, and they didn't want to enter into that settlement any more. But I continued to pursue that line of settlement believing it was in my clients' best interests in reaching an agreement that I knew that would have to

4. Because Mr. and Mrs. Humphreys experienced financial difficulties, they voluntarily returned the car to the bank. The bank was able to sell the car for the Blue Book Value and deficiency on the note was about $1,671. The bank agreed to accept $1,000 in full satisfaction of the deficiency. Chrysler argues that because the car sold for Blue Book Value, Mr. and Mrs. Humphreys received "full value" for the car.

The mere relation of attorney and client does not clothe the attorney with implied authority to compromise a claim of the client.

See *Fortuna v. Queen*, 178 W.Va. 586, 589, 363 S.E.2d 472, 475 (1987). The relationship of attorney and client does not imply that a power has been given to the attorney to compromise and settle a claim. In Syllabus Point 1, *Kelly v. Belcher*, 155 W.Va. 757, 187 S.E.2d 617 (1972), we said:

> The well recognized general rule is that an attorney who is clothed with no other authority than that arising from his employment as attorney has no implied power by virtue of his general retainer to compromise and settle a claim or cause of action of his client.

The record in the present case indicates that in the Fall of 1988, Mr. and Mrs. Humphreys granted their lawyer authority to settle the case pursuant to the terms that they discussed. After Chrysler rejected the proposed settlement, Mr. and Mrs. Humphreys terminated their lawyer's authority to settle. The record indicates that Mr. and Mrs. Humphreys wanted to pursue their claim. Chrysler's argument that Mr. Stowers continued to have authority to settle on the terms of the original offer must be rejected in light of the testimony of Mr. and Mrs. Humphreys.[5] Even Mr. Stowers acknowledged that after Chrysler's rejection he lacked Mr. and Mrs. Humphreys' authority to settle the case. Rather, Mr. Stowers continued to negotiate in the hope of reaching a settlement that would be approved by his clients. The record indicates that after Chrysler's rejection, any settlement was subject to Mr. and Mrs. Humphreys' approval.

Recently in *O'Connor v. GCC Beverages, Inc.*, 182 W.Va. 689, 691, 391 S.E.2d 379, 381 (1990), we noted the contractual nature of compromise and settlement and held that " 'a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties.' 15A C.J.S. *Compromise & Settlement* § 7(1) (1967)." In *O'Connor*, we found that no settlement was reached because the parties were unable to produce a written agreement that memorializing the proposed settlement. We refused to uphold the compromise because "there was no true meeting of the minds on the day in question." *Id.*, 182 W.Va. at 692, 391 S.E.2d at 382. In the present case, there was no meeting of the minds because Mr. and Mrs. Humphreys did not approve of the compromise made by their lawyer without their authority.

In Syllabus Point 6, *Dwight v. Hazlett*, 107 W.Va. 192, 147 S.E. 877 (1929), we stated:

> Where an attorney makes a compromise unauthorized by his client, and consents to a judgment thereon, the judgment may be vacated upon the application of the aggrieved client, seasonably made.

In the present case, Mr. and Mrs. Humphreys never agreed to the final settlement and after the rejection of their settlement offer, their attorney lacked the authority to bind them to any settlement, even a settlement facially similar to their rejected offer.

We find that the settlement was unauthorized by Mr. and Mrs. Humphreys and that their lawyer lacked their authority to settle the case. We, therefore, reverse the decision of the Kanawha County Circuit Court to enforce the settlement agreement between the parties.

Reversed.

---

5. We also note that although the final settlement appears to be identical to the authorized settlement, it differs in its timing and in the amount of payment.