**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KENNETH D. AUVIL,
Plaintiff-Appellant,

v.                                                              No. 95-1085

GRAFTON HOMES, INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, District Judge.
(CA-93-165)

Argued: March 4, 1996

Decided: August 6, 1996

Before NIEMEYER and MOTZ, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Motz and Senior Judge Butzner joined.

_____

**COUNSEL**

**ARGUED:** Harry A. Smith, III, Elkins, West Virginia, for Appellant.
Carl Lee Fletcher, Jr., SPILMAN, THOMAS & BATTLE, Charles-
ton, West Virginia, for Appellee. **ON BRIEF:** Paul E. Parker, III,
SPILMAN, THOMAS & BATTLE, Charleston, West Virginia, for
Appellee.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This appeal presents the question of whether a settlement of this case, consummated by the parties' attorneys, should be enforced against one of the parties, Kenneth D. Auvil. The district court enforced the settlement against Auvil, concluding that Auvil had clothed his attorney with apparent authority to settle. While the record facts support the conclusion that Auvil manifested his attorney's authority to <u>negotiate</u> a settlement, we do not agree that they support the conclusion that Auvil manifested his attorney's authority to <u>execute</u> a settlement agreement. Therefore, we vacate the district court's order and remand this case for further proceedings.

I

In 1985, Auvil became president of Grafton Homes, Inc., and brought with him architectural plans that he had developed for construction of a style of modular home. Five years later, Auvil resigned from Grafton Homes because of a disagreement and requested the return of his plans. During the course of the ensuing dispute, Auvil obtained copyrights for the plans and then brought this copyright infringement action to enjoin Grafton Homes' continued use of them. Grafton Homes filed a counterclaim, alleging that Auvil had assigned his plans to Grafton Homes and that Auvil's use of the plans infringed its proprietary rights.

During pretrial discovery, counsel for the parties discussed the possibility of a settlement involving mutual releases and mutual use of the plans without any payment of money. Auvil, however, rejected that proposal. Following further discovery concerning the validity of Auvil's copyrights, the attorneys met again on October 24, 1994, and reached a settlement to which, they believed, their clients thereafter agreed. When Auvil later denied that he had agreed to any settlement or that he had authorized his attorney, Melvin C. Snyder, III, to settle the case on his behalf, Grafton Homes filed a motion to enforce the settlement. Snyder withdrew as Auvil's counsel, and the district court conducted a hearing into the events of October 24.

2

According to Snyder's testimony at the hearing, the parties and their attorneys assembled on October 24, 1994, to take a deposition and discuss settlement. Before the commencement of the deposition, Snyder met alone with Grafton Homes' counsel, Bernard R. Corbett and Paul E. Parker, III. The attorneys agreed to terms of a settlement that they would recommend to their clients involving mutual dismissals of their claims, mutual releases and covenants not to sue, and mutual authorizations for use of the disputed architectural plans. Each side would bear its own costs and expenses and neither side would pay the other any compensation. Although Snyder had been "authorized to negotiate" a settlement on Auvil's behalf, he acknowledged at the hearing that he had "not [been] authorized to settle [the case] without [Auvil's] approval."

Following the attorneys' meeting, Snyder met with Auvil and his wife. Believing that the terms he had agreed to with opposing counsel were reasonable, Snyder recommended that the Auvils accept the settlement. Even though the proposal was essentially the same as the earlier one that Auvil had rejected, Snyder explained that the proposal was now reasonable in light of subsequently developed information about the weakness of Auvil's copyrights. Snyder then asked the Auvils whether they wished to settle. Snyder understood Auvil's response to be an authorization to proceed with the proposed settlement; he testified, "While I don't recall the exact words, my basic understanding was that Mr. Auvil said go ahead and do that."

According to Snyder, Mr. and Mrs. Auvil then left the room and went home, and he returned to the conference room to advise opposing counsel of the settlement. Because a court reporter was present for the deposition the parties had scheduled for the afternoon, the lawyers put the terms of the settlement "on the record." Parker, counsel for Grafton Homes, undertook responsibility for drafting the settlement papers, and a few days later he forwarded them to Snyder for Auvil's approval.

Snyder testified that when Auvil received the settlement papers, he requested some additional terms regarding the return of some furniture that Auvil had taken to Grafton Homes and the resolution of a loan Grafton Homes had made to Auvil's son. At the same time Grafton Homes proposed adding a section to the settlement "regarding

3

advertising of projects undertaken or completed while Mr. Auvil was at Grafton Homes." Several days later, Auvil refused to proceed further with the settlement, failing to provide Snyder with any explanation. Snyder testified that Auvil "just did not feel comfortable with going forward with the settlement."

At the hearing, Snyder testified unequivocally that he believed he and Grafton Homes' counsel had consummated a valid and enforceable settlement on October 24 with the consent of the clients. In connection with the modifications subsequently proposed to the settlement, Snyder understood them merely to be negotiations to modify the settlement, rather than a continuation of settlement negotiations begun on October 24. Absent mutual agreement on any of the proposed modifications, Snyder viewed the terms of the October 24 agreement as binding.

Both Auvil and his wife also testified at the hearing, but to a completely different course of events. The Auvils stated that at the October 24 meeting, Snyder had highlighted the problems with their case, retreating from his earlier view that their case was strong. They claimed that they had been shocked by Snyder's "complete turn around" and had left the room without discussing settlement. Because the Auvils had not agreed to anything, Mrs. Auvil testified that she was surprised when she later received settlement papers from Snyder. Auvil testified similarly, stating that although Snyder's early assessments of the case had encouraged him, Snyder was now urging Auvil and his wife "to get on with [their] lives." Auvil insisted that he had "absolutely not [been] presented" with a settlement proposal and that he had never authorized Snyder to settle the case. Explaining his reason for subsequently requesting modifications to the settlement papers, Auvil stated that he had lost faith in Snyder by that time and admitted that he "did toy and tease" in order to "find a little time" to hire another attorney.

Neither Corbett nor Parker testified under oath at the hearing, but they did represent to the court that they believed that the settlement agreement they had reached with Snyder on October 24 was binding and that Snyder had Auvil's authority to settle.

At the conclusion of the hearing, the district court expressed concern about the vastly inconsistent testimony given by Snyder and the

4

Auvils. The court observed that "there is a material question as to . . . what the Auvils knew and, therefore, what the terms of the agreement could have been and whether there was a meeting of the minds on the agreement to settle." Because "it's clear that there has to be here a disputed material fact," the court declined to enforce a settlement agreement and ordered the case to proceed to trial as scheduled.

Following the district court's ruling, Parker wrote a letter to the court urging it to reconsider Grafton Homes' motion to enforce the settlement based on the argument that Snyder had "`apparent authority' to settle the case." On reconsideration, the court adopted that theory, enforced the settlement agreement, and dismissed the case. In ruling that Auvil had "clothed" Snyder with "apparent authority to settle" and therefore was "bound by the settlement regardless of whether he now denies he gave Snyder actual authority," the court reasoned:

> Auvil informed Grafton that Snyder represented him and allowed Snyder to conduct settlement negotiations on his behalf. Moreover, Auvil specifically informed Grafton's attorney that Snyder might offer a settlement after the deposition of Grafton's president, William Shaw, was completed. On October 24, 1994, Snyder negotiated with the attorneys for Grafton and then met with Auvil to obtain authorization to settle the case. After that meeting, Auvil and his wife left, and Snyder informed the attorneys for Grafton that the settlement offer had been accepted. Moreover, on October 28, 1994, after receiving settlement papers from Snyder, Auvil directed him to inquire about additional terms. In Auvil's own words, he was "toying" with Snyder and Grafton in order to gain time to seek for new counsel. From his own actions, he permitted Grafton to believe that Snyder had authority to settle the case on his behalf.

II

It is generally accepted that when a client retains an attorney to represent him in litigation, absent an express agreement to the contrary, the attorney has implied authority to conduct the litigation and to negotiate its resolution. But the "[s]ubstantive decisions of whether to bring suit, to dismiss suit, or to settle are not by implication ones that

5

the attorney is authorized to make." Schafer v. Barrier Island Station, Inc., 946 F.2d 1075, 1079 (4th Cir. 1991). The law of West Virginia --the state in which this alleged settlement agreement was made--is not to the contrary. See Humphreys v. Chrysler Motors Corp., 399 S.E.2d 60, 62 (W. Va. 1990) (per curiam); Dwight v. Hazlett, 147 S.E. 877, 879 (W. Va. 1929).

At the hearing in the case, Snyder recognized that although he had implied authority "to negotiate," he "certainly was not authorized to settle [the case] without [Auvil's] approval." But Snyder claimed that when presented with his proposed settlement, Auvil approved it and gave Snyder authority to consummate it. Auvil, on the other hand, denied having given Snyder any authority to settle. The district court, rather than resolve the factual dispute over whether Auvil had expressly authorized Snyder to act, elected to enforce the settlement on the theory that Snyder had apparent authority to settle the case.

Apparent authority results from a principal's manifestation of an agent's authority to a third party, regardless of the actual understanding between the principal and agent. See Crothers v. Commodity Futures Trading Comm'n, 33 F.3d 405, 410 (4th Cir. 1994); Restatement (Second) of Agency § 8 (1957); see also General Elec. Credit Corp. v. Fields, 133 S.E.2d 780, 783-84 (W. Va. 1963). Indeed, apparent authority is "entirely distinct" from--and sometimes conflicts with--both express and implied authority. Restatement (Second) of Agency § 8 cmt. a. When a principal, through his acts or omissions, causes a third party, in good faith and in the exercise of reasonable prudence, to rely on the agent's authority to act on the principal's behalf, the agent can bind the principal. See Crothers, 33 F.3d at 410; General Elec. Credit Corp., 133 S.E.2d at 783-84.

From the well-established tenet that an agent cannot create his own authority to represent a principal, see NLRB v. Local 1058, UMW, 957 F.2d 149, 153 (4th Cir. 1992), it follows that an agent's statements that he has such authority cannot, without more, entitle a third party to rely on his agency, see Fennell v. TLB Kent Co., 865 F.2d 498, 502 (2d Cir. 1989); D&G Equip. Co. v. First Nat'l Bank of Greencastle, 764 F.2d 950, 954 (3d Cir. 1985); see also Restatement (Second) of Agency §§ 7, 285 (1957). An agent's authority must be conferred by

6

some manifestation by the <u>principal</u> that the agent is authorized to act on the principal's behalf. <u>Id.</u> §§ 7-8.

Auvil's manifestations to Grafton Homes and its attorneys in this case undoubtedly indicated that Snyder was Auvil's attorney and that Snyder had the authority to negotiate a resolution of the dispute on Auvil's behalf. The authority to negotiate, however, is far different from the authority to agree to a specific settlement. Our review of the record uncovered no manifestation by Auvil to Grafton Homes or its attorneys from which Grafton Homes could reasonably conclude that Auvil had authorized Snyder to consummate a settlement.

The district court mistook Auvil's manifestations of Snyder's authority to negotiate a settlement on Auvil's behalf for manifestations of his authority to execute a settlement. In support of its finding of apparent authority, the court stated, "Auvil informed Grafton that Snyder represented him and allowed Snyder to conduct settlement <u>negotiations</u> on his behalf." (Emphasis added). Similarly, the court relied on facts that Auvil told a Grafton Homes' attorney before October 24 that Snyder might propose a settlement; that Snyder negotiated on October 24 with Grafton Homes' attorneys and then met with Auvil to obtain settlement authorization; and that after receiving settlement papers, Auvil directed Snyder to inquire about additional terms. At most, Auvil's manifestations evince Snyder's actual authority to conduct settlement negotiations; Auvil never indicated to Grafton Homes that he was relinquishing his right to approve a settlement, and Grafton Homes apparently recognized that fact when it later forwarded settlement papers for "Auvil's approval."

These circumstances are not unlike those in <u>Edwards v. Born, Inc.</u>, 792 F.2d 387 (3d Cir. 1986), where the court held that the record facts did not "warrant the legal conclusion that [the plaintiffs' attorney] had the power to settle." <u>Id.</u> at 390-91. In <u>Edwards</u>, the district court had determined that an attorney had apparent authority to settle his clients' case because (1) he had represented the clients since they filed their suit; (2) he had transmitted all communications between his clients and the opposing litigants; (3) a magistrate judge had entered pretrial conference orders requiring the attorneys to appear with authority to settle; and (4) one of the clients had entrusted the attorney to select physicians and a psychiatrist to prepare for trial. Because,

7

however, the "record [was] devoid of communications from the plaintiffs to defense counsel, much less representations that might have led defense counsel to believe that [the plaintiffs' counsel] had [their] permission to settle," the Third Circuit reversed, concluding that the plaintiffs' attorney did not have apparent authority to settle.

The one manifestation that might have gone farther in this case is that after meeting with Snyder on October 24, the Auvils left the building while Snyder returned to the conference room to inform Grafton Homes' counsel that the Auvils had agreed to the settlement. Grafton Homes argues that this combination of events is sufficient to create Snyder's apparent authority to settle. But the Auvils' conduct --leaving the building after meeting with Snyder--communicated nothing about their attorney's authority. The Auvils were not present when Snyder announced that the case had been settled, and their conduct in leaving did not manifest acquiescence in Snyder's later statement of authority. The meaning Grafton Homes imparts to the Auvils' departure derives not from their conduct, but rather from Snyder's statement. To permit a finding of apparent authority on that basis would abrogate the fundamental requirement of agency law that the agent's apparent authority flow from the principal's conduct. See Local Union 1058, 957 F.2d at 153.

The testimony before the district court would undoubtedly have permitted the court to find that Auvil was attempting to manipulate the settlement process. If Snyder is believed, the Auvils expressly authorized him to negotiate a settlement and agreed to it, only to back away from it later. The district court thus could well have believed Snyder and, in a proper exercise of its equitable power, enforced the settlement. See Napier v. Chesapeake and Ohio Railway Co., 582 F.2d 1344 (4th Cir. 1978). Unfortunately, however, the court did not find the crucial facts, one way or the other. A remand will permit the district court, in the first instance, to resolve the factual dispute concerning Snyder's actual authority. But this ruling is not intended to suggest any view concerning Snyder's actual authority to settle the case; we merely conclude that the facts do not support the conclusion that Snyder's settlement of the case can be justified on principles of apparent authority.

8

Accordingly, we vacate the district court's order enforcing the settlement and remand the case for further consideration. In light of our disposition, we need not address Auvil's other arguments.

VACATED AND REMANDED

9