IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-1015

_____

FILED
June 14, 2023
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

DAVID A. LEVINE,
Plaintiff Below, Petitioner,

V.

ROCKWOOL INTERNATIONAL A/S, BJØRN RICI ANDERSEN, JEFFERSON
COUNTY PROSPERITY, INC., ROXUL USA, INC., DANIEL CASTO, RAYMOND J.
BRUNING, and STEVEN STOLIPHER,
Defendants Below, Respondents.

_____

Appeal from the Circuit Court of Jefferson County
The Honorable Debra McLaughlin, Judge
Civil Action No. 19-C-139

REVERSED AND REMANDED

_____

Submitted: April 19, 2023
Filed: June 14, 2023

Brian R. Blickenstaff, Esq.
Turner & Johns, PLLC
Charleston, West Virginia
Attorney for the Petitioner

Michael D. Dunham, Esq.
Shuman McCuskey Slicer PLLC
Winchester, Virginia
William R. Slicer, Esq.
Shuman McCuskey Slicer PLLC
Charleston, West Virginia
Attorneys for the Respondents

Kathy M. Santa Barbara, Esq.
The Law Office of Kathy M. Santa
Barbara, PLLC
Martinsburg, West Virginia
Attorney for the Respondents
Rockwool International A/S,
Bjørn Rici Andersen, and
Roxul USA, Inc.

Jefferson County Prosperity, Inc.,
Daniel Casto,
Raymond J. Bruning, and
Steven Stolipher


JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to write separately.

**SYLLABUS BY THE COURT**

1.      "Where the issue of the enforceability of a settlement agreement requires the lower court to make findings of fact and apply contractual or other legal principles, this Court will review its order and the ultimate disposition under an abuse of discretion standard, its underlying factual findings under a clearly erroneous standard, and questions of law pursuant to a de novo review." Syllabus point 2, *Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 245 W. Va. 63, 857 S.E.2d 403 (2021).

2.      "Where, from all the evidence and circumstances of the case, it appears that the parties to an agreement being negotiated between them intend that, as a condition precedent to its becoming binding upon them, it should be reduced to writing and signed by the parties, an oral agreement, though it covers all the terms of the proposed agreement, is not binding on the parties, until it is reduced to writing, and has been signed by all the parties thereto." Syllabus point 1, *Blair v. Dickinson*, 133 W.Va. 38, 54 S.E.2d 828 (1949).

BUNN, Justice:

Petitioner David A. Levine appeals the Circuit Court of Jefferson County's November 19, 2021 order enforcing a settlement agreement between him and the respondents. He raises one issue on appeal: Whether the court erred when it found that the parties entered into a settlement agreement via email and then enforced that agreement. We conclude that the circuit court should have held a hearing on the matter and reverse and remand on those grounds.

## I.

## FACTUAL AND PROCEDURAL HISTORY

In August 2019, Mr. Levine filed a civil case, numbered 19-C-139, in the Circuit Court of Jefferson County. His amended complaint filed in September 2019 included Respondents Rockwool International A/S ("Rockwool"), Bjørn Rici Andersen, and Roxul USA, Inc. (the Rockwool Respondents); as well as Respondents Jefferson County Prosperity, Inc., Daniel Casto, Raymond J. Bruning, and Steven Stolipher (the JCP Respondents). During the pendency of this case, two other cases were filed in the Circuit Court of Jefferson County: in one, 20-C-129, Mr. Levine filed a civil complaint against the JCP Respondents only, while in another, 21-C-2, Mr. Casto filed a civil complaint against Mr. Levine and other parties.

Two years later, in August 2021, Mr. Levine's attorney discussed a potential settlement with at least one of Mr. Casto's attorneys. On the morning of August 31, 2021, Mr. Casto's attorney in that matter emailed Mr. Levine's counsel regarding his "offer for global resolution of pending cases/claims with a walk-away between Dan Casto and David Levine (and others)." Mr. Casto's attorney concluded, writing "Speaking for Dan, we accept this offer. We will work to put a global draft settlement agreement together for your review." The email did not indicate whether Mr. Levine's attorney communicated the offer via telephone or email.

Less than an hour later on the same day, counsel for the JCP Respondents sent the following email to Mr. Levine's attorney:

> I received word this morning that your client, David Levine, has authorized you to enter into a global settlement with [the JCP Respondents and Mark Everhart]. It is my understanding that the terms of this agreement are that David Levine will drop and dismiss with prejudice all claims set forth in 19-C-139 and 20-C-129 and Mr. Casto and Mr. Everhart will drop all claims they have pending against Mr. Levine, including claims in which this office does not represent Mr. Casto. The terms of the settlement will include mutual non-disparagement and confidentially [sic] of the terms of the settlement to the extent allowed by WV law. Further, there will be no exchange of any money as a result of this settlement. All parties will execute a release.
>
> Please confirm that these settlement terms are correct and confirm that your client agrees to these terms. If there is anything missing, please let me know.
>
> Thank you.

Within half an hour, Mr. Levine's counsel responded via email, "[y]ou are correct at [sic] to the terms of the agreement."

A little more than a week later, counsel for the JCP Respondents again emailed Mr. Levine's counsel, stating "I want to confirm that this settlement is to include the Rockwool [Respondents] consistent with dismissal of all claims set forth in 19-C-139. I hope to have a release to you for review early next week." He concluded, "[p]lease let me know your thoughts."

Mr. Levine's attorney responded via email five days later, on September 13, 2021. He stated, "[s]orry, last week was interesting. I got your message and the settlement would include the Rockwool [Respondents]." On the same day, Mr. Levine's counsel also emailed the Rockwool Respondents' counsel: "Mr. Levine is contemplating a full settlement of all allegations. I just sent an e-mail to [counsel for the JCP Respondents] to include the 'Rockwool [Respondents].' So I think we are moving to a resolution of this issue."

On September 15, 2021, the Rockwool Respondents' counsel responded via email to Mr. Levine's counsel, asking to speak to him "to discuss the settlement

3

agreement." She sought a phone call, noting "I'd like to discuss with you prior to discussing with [the JCP Respondents' attorney] since I know what he will say on my questions. I need to know Mr. Levine's position." She concluded that "[w]e, too, would like to get this signed by the end of the week so I'm working with that in mind."

The next day, on September 16, 2021, counsel for the JCP Respondents emailed Mr. Levine's attorney, copying other involved attorneys and at least one party involved in the case:

> Attached please find a proposed release for this matter. To confirm, Mr. Levine has agreed to a settlement where he dismisses all claims against [all Respondents and Mark Everhart] for no money and in exchange, Mr. Casto and Mr. Everhart will drop all claims they have pending against Mr. Levine. The terms of the settlement include mutual non-disparagement and all parties will pay their own attorneys' fees. I have presumed that the confidentiality provision was requested by Mr. Levine, however, we are prepared to remove confidentiality as a term if you do not feel it is required.

> Please let me know if you have any proposed revisions to the release.

Slightly more than an hour later, the Rockwool Respondents' counsel emailed Mr. Levine's counsel, asking him to examine motions to extend time for his approval. She continued:

> Also, to confirm our telephone conversation of earlier today . . . it is my understanding that as of that time you had not seen the proposed settlement agreement drafted by [counsel for the JCP Respondents] with the input of other defense counsel,

4

but that you did understand that the agreement was that all of these matters would be settled with no funds exchanging hands to accomplish that settlement. The only issue was whether Mr. Levine wanted confidentiality provisions in the agreement (it was drafted to include such provisions). This is not important to Rockwool and from [counsel for the JCP Respondents'] email of earlier today apparently it is not important to any of the other defendants.

On October 6, 2021, the Rockwool Respondents' counsel emailed Mr. Levine's attorney, inquiring as to the status of the settlement agreement:

When we spoke on Monday, you indicated that we should touch base today since you thought by then you would have spoken with Mr. Levine. I just called and had to leave a voicemail message for you. We need to know the status of getting this settlement agreement signed. Is there some problem with it? Mr. Levine has already agreed to the settlement, so we need to know if there are terms in the agreement that you or he have a problem with. Please let me know as soon as possible. I look forward to hearing back from you today.

Mr. Levine's counsel responded the next day, emailing the Rockwool Respondents' counsel and copying counsel for the JCP Respondents on the email: "I spoke briefly with the client today. We are going to talk again tomorrow, I expect some changes that will have to be cycled through the other parties. I [should] know more after tomorrow."

The JCP Respondents' counsel sent another email on October 11, 2021, to Mr. Levine's counsel and to the Rockwool Respondents' counsel, copying an individual party: "What if any changes does your client request? You have had the document since September 16th. Please let us know today. Thank you."

On October 15, 2021, the JCP Respondents and the Rockwool Respondents filed a written joint motion to enforce the settlement agreement. They requested as relief that the circuit court require Mr. Levine to execute the settlement and release agreement, dismiss his complaint with prejudice, award attorneys' fees and costs relating to bringing the motion, and other relief as the court wished. Mr. Levine's written response opposed the motion on the grounds of lack of mutual assent, further arguing that the settlement was predicated on a written settlement agreement approved by all parties. The parties submitted exhibits of emails sent between the parties' attorneys. No party attached the proposed written settlement agreement as an exhibit, although based upon Mr. Levine's representations, it apparently included additional terms, such as an arbitration provision, that were not discussed in any emails. The circuit court did not hold a hearing on the motion.

On November 19, 2021, the circuit court entered an order granting the motion to enforce the settlement agreement in the underlying case, 19-C-139, and entered the same order in cases 20-C-129 and 21-C-2. The court examined the two August 31, 2021 emails between counsel for the JCP Respondents and Mr. Levine's counsel and found that the parties "agreed to all material terms of the agreement and that the parties formed a contract to settle all claims." Ordering that the terms of the agreement were those set forth in the August 31, 2021 email from the JCP Respondents' counsel, the court granted the motion

6

to enforce the settlement agreement and stated that the agreement resolved and settled all claims in the three cases. The court determined that the settlement agreement included the following terms: (1) that Mr. Levine would "drop and dismiss with prejudice" all claims in the 19-C-139 and 20-C-129 cases, while Mr. Casto and Mr. Everhart would drop "all claims they have pending against Mr. Levine;" (2) that "[t]he parties shall commit to mutual non-disparagement and [confidentiality] of the terms of the settlement to the extent allowed by West Virginia law;" (3) that the parties shall not exchange money; and (4) all parties must execute a release. Mr. Levine appealed only in case 19-C-139.

## II.

### STANDARD OF REVIEW

This Court applies the following standard when reviewing a circuit court's order granting a motion to enforce a settlement:

> Where the issue of the enforceability of a settlement agreement requires the lower court to make findings of fact and apply contractual or other legal principles, this Court will review its order and the ultimate disposition under an abuse of discretion standard, its underlying factual findings under a clearly erroneous standard, and questions of law pursuant to a de novo review.

Syl. pt. 2, *Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 245 W. Va. 63, 857 S.E.2d 403 (2021).

## III.

## DISCUSSION

Mr. Levine contends that the circuit court erred because the settlement lacked mutual assent and that the terms required a written settlement agreement. The Respondents argue that the settlement agreement was entered into when Mr. Levine's attorney responded to the August 31, 2021, email from the JCP Respondents' counsel. Given the sparse record created in the proceedings below, we find that the circuit court abused its discretion by failing to conduct a hearing to develop the evidence as to whether the parties had entered an enforceable settlement.

We recognize and agree with the circuit court that in West Virginia "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." Syl. pt. 1, *Sanders v. Roselawn Mem'l Gardens*, 152 W. Va. 91, 159 S.E.2d 784 (1968). Furthermore, "settlement agreements are to be construed 'as any other contract.'" *Burdette v. Burdette Realty Improvement, Inc.*, 214 W. Va. 448, 452, 590 S.E.2d 641, 645 (2003) (per curiam) (quoting *Floyd v. Watson*, 163 W. Va. 65, 68, 254 S.E.2d 687, 690 (1979)). A contract requires "'a definite meeting of the minds . . . , since a settlement cannot be predicated on equivocal actions of the parties.'" *O'Connor v. GCC Beverages, Inc.*, 182 W. Va. 689, 691, 391 S.E.2d 379, 381 (1990) (per curiam) (quoting 15A C.J.S.

8

*Compromise & Settlement* § 7(1) (1967)). However, to have a meeting of the minds, the parties must have "the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008) (per curiam).

We have recognized that a settlement agreement can be reached via communications between counsel, even when a party does not sign a written settlement agreement. *See Donahue v. Mammoth Restoration & Cleaning*, 246 W. Va. 398, 405, 874 S.E.2d 1, 8 (2022) (finding that the evidence of emails and voicemail between counsel "clearly demonstrate[d] that the parties had 'the same understanding of the terms of the agreement reached.'" (quoting *Messer*, 222 W. Va. at 418, 664 S.E.2d at 759)). *See also Russell v. Bayview Loan Servicing, LLC*, No. 20-0681, 2021 WL 2577498, at *4 (W. Va. June 23, 2021) (memorandum decision) (affirming a circuit court's determination that a settlement agreement arose from emails between counsel after a hearing where both petitioner and her counsel testified). We also have found that when the parties take steps in reliance on an agreement, those steps are evidence as to the existence of the agreement. *See Donahue*, 246 W. Va. at 405, 874 S.E.2d at 8 (finding a settlement agreement had been reached when evidence included that a party paid funds to repair water damage in reliance on agreement). *See also Russell*, No. 20-0681, 2021 WL 2577498, at *4 (enforcing settlement agreement where the parties informed the circuit court that a settlement

agreement had been reached and that respondent canceled petitioner's deposition and performed credit repair in reliance on the agreement).

Despite other indicia of a meeting of the minds, the evidence and circumstances may show that the parties intend that an additional condition of the agreement is that it be signed and in writing. Syl., *O'Connor*, 182 W. Va. at 689, 391 S.E.2d at 379. As we explained in Syllabus Point 1 of *Blair v. Dickinson*, 133 W. Va. 38, 54 S.E.2d 828 (1949)),

> Where, from all the evidence and circumstances of the case, it appears that the parties to an agreement being negotiated between them intend that, as a condition precedent to its becoming binding upon them, it should be reduced to writing and signed by the parties, an oral agreement, though it covers all the terms of the proposed agreement, is not binding on the parties, until it is reduced to writing, and has been signed by all the parties thereto.

Here, we find that under the facts and circumstances of this case, the circuit court erred in concluding that the parties entered into an enforceable settlement where the evidence required factual development as to mutual assent. The parties disagree over the existence of an agreement and its purported terms. Mr. Levine argues that the August 31, 2021, email from the JCP Respondents' attorney included the "broad strokes" of the agreement, rather than the entire agreement itself. Mr. Levine's counsel responded that the August 31, 2021, email from the JCP Respondents' attorney was correct in regard to the agreement's terms. Yet, an earlier message that same day to Mr. Levine's counsel, from a

10

different attorney representing Mr. Casto, discussed putting together "a global draft settlement agreement." Furthermore, when the JCP Respondents' counsel sent the settlement agreement, he asked Mr. Levine's attorney for proposed revisions, suggesting the expectation of additional changes and potentially demonstrating that the parties continued to negotiate certain aspects of the settlement. The parties had to clarify that the Rockwool Respondents would be included in the global settlement. Mr. Levine's attorney eventually told the Rockwool Respondents' attorney that he expected some changes to the agreement would be needed. Furthermore, according to Mr. Levine, the draft settlement agreement included an arbitration provision, to which he had not acquiesced, a representation requiring development below. Further, the record reflects that additional phone calls and discussions were held, the effect of which was neither developed nor considered by the circuit court. The circuit court heard no testimony as to what Mr. Levine's or the Respondents' counsel understood to be the terms of the parties' agreement or the significance of the parties' continued communications as to those terms. The circuit court's order further lacks any indication about whether the parties acted in reliance on the agreement. Therefore, under the particular facts of this case—which purports to reflect a complex settlement agreement including multiple parties, multiple civil actions, non-standard settlement terms such as confidentiality and non-disparagement, and extensive communications about the global settlement—we find that the circuit court erred in finding that the parties' entered an enforceable settlement without further factual development.

As the Fourth Circuit Court of Appeals has explained, "[b]ecause exercise of the authority to enforce settlement agreements depends on the parties' agreement to a complete settlement, the court cannot enforce a settlement until it concludes that a complete agreement has been reached and determines the terms and conditions of that agreement." *Hensley v. Alcon Lab'ys, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). While we do not agree with the Fourth Circuit that a court must *always* conduct a hearing to evaluate factual disputes surrounding the existence of a settlement agreement, *see id.* at 541, the paucity of the record before the circuit court required it to conduct an evidentiary hearing to determine whether there was a meeting of the minds regarding the terms of the settlement agreement.

For these reasons, we must remand this case to the circuit court for an evidentiary hearing to determine whether a settlement agreement exists, and if it does exist, the terms of that agreement.

## IV.

### CONCLUSION

Accordingly, we reverse and remand the final order of the Circuit Court of Jefferson County dated November 19, 2021, for further proceedings in accordance with this opinion.

Reversed and Remanded.