Eugene C. BRONSON, Appellant,

v.

G. E. BORST, Jr., Appellee.

No. 12628.

District of Columbia Court of Appeals.

Argued Dec. 13, 1978.

Decided July 31, 1979.

Michael O. DeMouy, Washington, D. C., with whom Helene K. Monat, Washington, D. C., was on the briefs, for appellant.

G. E. Borst, Jr., pro se.

Before KELLY and HARRIS, Associate Judges, and SHUKER, Associate Judge, Superior Court of the District of Columbia.*

KELLY, Associate Judge:

Eugene C. Bronson here appeals from an adverse decision in a declaratory judgment action filed against him to enforce a settlement agreement and for the payment of attorney's fees and costs, arguing that the trial court erred in holding that an attorney does not need specific authority to accept a settlement on behalf of his client; in denying a motion, made on the day of trial, to amend his answer to include a counter-

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. Bronson argues that his failure to respond was the result of his hospital convalescence

claim; and in failing to allow him to make a statement to the court while under oath. We reverse.

I

The material facts are largely undisputed. On May 1, 1972, appellant's automobile was struck by an automobile owned by Mattos, Inc. In order to pursue a claim for personal injuries caused by the accident, appellant retained appellee Borst under a general retainer agreement which provided only for the usual contingency basis of payment, i. e., Borst was to receive one-third of any judgment recovered.

Borst was able to negotiate a $6,000 settlement of appellant's claim with Mattos' insurer, but when he informed appellant of the proposed agreement, appellant made it clear to Borst that he would not accept the offer of settlement. From then on relations between Borst and his client became strained. Bronson, who at the time resided outside the District, failed to respond to Borst's communications, which included a letter in which Borst suggested that if Bronson was unable to accept the settlement, he might wish to retain new counsel.[1] On April 30, 1975, the day before the statute of limitations ran, Borst, on behalf of his client Bronson, accepted the settlement offer.

Borst thereafter filed suit in Superior Court for a declaratory judgment to enforce the settlement he had accepted and for payment therefrom of attorney's fees and costs. Under oath, at trial, Borst testified to the above facts and to his reasons for accepting the compromise. He said he felt that if he did not accept the settlement, Bronson would have lost all chance for recovery. Since he had received no direction from Bronson after the letter explaining why settlement was necessary and suggesting new counsel should Bronson wish to pursue the claim, Borst maintained that he

from a number of heart attacks. He did, however, file a pro se action in the Federal District Court which was dismissed for lack of jurisdiction.

had no alternative to the reasonable and justified step of accepting the settlement. Borst testified he felt that the claim was without merit since Bronson claimed a 100% disability resulting from a previous accident and therefore he could not hope to receive a jury award larger than the settlement offer. Borst also stated that Bronson was unwilling or unable to assume the responsibility of paying for expert witnesses and other court costs. The parties agreed that there existed no specific and explicit authority in Borst to accept a settlement offer to compromise appellant's claim.

Bronson conducted a vigorous, but inartful, cross-examination. Frequently the trial judge admonished Bronson that his questioning was argumentative and advised that he would have an opportunity later to take the stand and present his case. After Borst left the stand, however, the trial judge asked Bronson to present support in the law for his case. When Bronson completed his statement, the judge ruled for Borst without giving Bronson the opportunity to take the stand and testify under oath.

## II

■ Appellant's first argument is that the trial court erred, as a matter of law, in holding that the settlement agreement at issue was binding on him. His analysis is that an attorney without express authority cannot accept for his client any settlement regardless of the merits of the client's case or the attractiveness of the settlement offer. That conclusion was stated succinctly in *Ashley v. Atlas Mfg. Co.,* D.C., 7 F.R.D. 77 (1946), *aff'd,* 82 U.S.App.D.C. 399, 166 F.2d 209 (1947). In *Ashley,* the court confronted a courtroom settlement to which counsel for both parties assented in open court. Although the court judged from the tenor of the agreement and the manner in which the attorney for defendant announced the agreement in the presence of the defendant that the attorney had specific authority to settle the case, the court noted that

as a matter of law it is true, strictly speaking, an attorney has no right, without special authority, to make a compromise for his client, . . . . [*Id.* at 77.]

Appellee argues that given the circumstances, his action in accepting the settlement in the face of his client's objections was reasonable and justified. He maintains that had he not so accepted the compromise offer, his client's claim would have been barred by the statute of limitations and his chances for recompense could have been lost forever. To file the suit as his client demanded, appellee contends, would have been a wholly futile and costly endeavor. Finally, appellee argues that his client was either ignorant of the high cost of litigation or was unwilling to bear the responsibility of making the expenditures; presumably the client expected his attorney to bear the expense of litigation.

In his brief to this court, appellee offers, no support in the law for the above proposition. At trial, he relied on *Mullen v. People's Drug Stores,* D.C.Mun.App., 124 A.2d 309 (1956), for the proposition that "one who is represented by counsel is bound by his actions." *Id.* at 310, citing *Turner v. Erwin,* D.C.Mun.App., 99 A.2d 222 (1953). Both *Turner* and *Mullen,* however, are inapposite to the issue here. In *Turner,* the court saddled the client with his attorney's negligence in not appearing to answer a complaint. In upholding a default judgment, the court noted that "one who comes into court through counsel of his own choice is bound by the actions of his counsel . . . ." *Id.* at 223. In *Mullen,* the issue was whether a client is bound by the trial tactics of his attorney; specifically, the decision not to call a witness whose testimony would have gone to stipulated facts.

Whether to penalize a party for his counsel's failure to appear in court and whether to bind a client to his attorney's trial tactics present issues distinct from the issues here. In the two former situations, the inquiry concerns the execution by the attorney of the services that, by contract, he must perform for his client. In the instant case, we must analyze actions which counsel was neither duty bound nor authorized to perform.

We agree with appellant that regardless of the good faith of the attorney, absent specific authority, an attorney cannot accept a settlement offer on behalf of a client. Mr. Borst felt that he had no option but to accept the settlement offer for fear that the cause of action would be barred. Such a fear was unfounded. Mr. Bronson had made his stand clear; he wanted to pursue his claim. If Mr. Borst had ethical or financial reservations about continued representation of Mr. Bronson, he could have terminated the relationship well before the statute ran or he could have filed the suit and requested leave of the court to withdraw early in the litigation. Regardless of the options available to him, appellee chose one route that was, or should have been, foreclosed to him. Accordingly, we reverse the judgment of the trial court which purports to enforce the settlement agreement.

### III

■ Appellant's second claim is that he should have been allowed to amend his answer to include a counterclaim for legal malpractice. The court denied him that opportunity because he sought to make the amendment on the day of trial.

At the outset, it is important to note that appellant's counterclaim was compulsory in nature. *See* Super.Ct.Civ.R. 13(a). That is so because it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." *Id.* As a compulsory counterclaim, the claim must be filed at the time of the filing of the appropriate pleading (here the answer) or it is lost forever. *Id.; see Southern Construction Co. v. Pickard,* 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962); *Owens v. Tiber Island Condominium Ass'n,* D.C.App., 373 A.2d 890 (1977).

Leave to file an omitted counterclaim beyond the proper time limitations should be granted where the court, in its discretion, determines that the omission is the result of "oversight, inadvertence, or excusable neglect," or where justice so demands. Super.Ct.Civ.R. 13(f); *see Runkle v. Nong Kimny,* 105 U.S.App.D.C. 285, 289, 266 F.2d 689, 693 (1959). Because of the finality attached to the failure to allege a compulsory counterclaim, the court should be liberal in the exercise of its discretion. *Randolph v. Franklin Investment Co.,* D.C.App., 398 A.2d 340 (1979) (citing cases).

We have very recently noted that

.  .  . on the basis of Rules 13, 15, and 54 there is a virtual presumption that leave to file a compulsory counterclaim is inherent, as a matter of "justice," in a court's grant of leave to file an answer, when it appears that the facts necessary to establish the defense would be sufficient in themselves to establish the counterclaim.  .  .  . [*Id.* at 350.]

Although there was no late filing of an answer here, the analysis nonetheless applies. In *Randolph,* we looked to a number of criteria to determine whether the court abused its discretion in denying a motion for leave to amend the answer to include a counterclaim. Those criteria include: the number of such requests, the length of the pendency of the trial, the number of previous continuances, the existence of bad faith or dilatory motive, the merit of the counterclaim, and the existence of prejudice to the other party. *Id.*

Applying the above analysis to the instant case, we can find no reason for denying appellant his opportunity to litigate the malpractice claim. Appellant had made no previous requests to amend his pleadings. The case had been pending only six months. There had been no continuances. There was no showing of bad faith; indeed, given that appellant was proceeding pro se, his lack of understanding of the rules of procedure is understandable. As outlined in Part II above, the counterclaim is not wholly without merit. Finally, to the extent that the substance of the counterclaim would have been the very substance of appellant's defense, appellee would have suffered no

prejudice in terms of surprise or added burden had the counterclaim been litigated.[2]

Finding that the trial court erred in its application of the law and in its denial of appellant's request to file a compulsory counterclaim,[3] we reverse the decision of the trial court and remand the cause for proceedings not inconsistent with this opinion.

*So ordered.*

2. Arguably, appellee was on actual notice that appellant intended to allege malpractice. In his answer, appellant stated, ". . . Atty. Borst . . . [is] liable to the defendant for misrepresentation, fraud on the court/or the defendant, malpractice."

3. In light of our disposition of this case, we need not consider whether appellant was denied his right to make a statement under oath to the trial court.