Savora MATZO, Plaintiff,

v.

POSTMASTER GENERAL, Defendant.

Civ. A. No. 86–3516.

United States District Court,
District of Columbia.

Sept. 18, 1987.

Joel P. Bennett, Washington, D.C., for plaintiff.

Linda A. Halpern, Asst. U.S. Atty., Washington, D.C., for defendant.

MEMORANDUM AND ORDER

JACKSON, District Judge.

Plaintiff Savora Matzo, a sometime grade 11 legal secretary with the U.S. Postal Service, sues the Postmaster General of the United States for his alleged discrimination against her in terminating her employment in April, 1980, for reasons attributable to her handicap, a disabling mental illness. She has exhausted her administrative remedies, and now prays that the Court award her back pay, attorney's fees and costs, and other appropriate relief under the Rehabilitation Act of 1973, 29 U.S. C. § 701 *et seq.* Defendant (hereinafter "USPS" or "Service") has moved to dismiss or for summary judgment, asserting that Ms. Matzo's claim is barred by a settlement agreement reached in December, 1980, with her former counsel; that she is not an "otherwise qualified person" as that term has been defined under the Act; and that, in any event, she was not removed "solely because of her handicap," but, rather, as a result of her failure to perform her job. USPS has also, it says, endeavored without success to accommodate her handicap to the extent required of it by law. Although plaintiff reminds the Court that discrimination cases are rarely susceptible of decision without trial, the Court finds that the essential facts material to a disposition of the case are to be found in the extensive administrative record, and at present stand uncontradicted by any evidence in the record here. It will, therefore, for the reasons set forth below, grant the motion for summary judgment and dismiss the complaint with prejudice.

I.

Savora Matzo was employed as a Senior Stenographer in the Office of Labor Law ("OLL"), United States Postal Service Headquarters, from 1970 through early 1980.[1] It is undisputed that her secretarial skills were more than adequate. In 1977,

at about age 34, Ms. Matzo began experiencing emotional problems. She informed her superiors and received permission to take leave for twice weekly therapy sessions. Ms. Matzo's behavior at work became, at intervals, increasingly erratic, disruptive and insubordinate, but OLL apparently tolerated the changes in Ms. Matzo's personality without comment until she absented herself for most of the months of December, 1978, and January, 1979. Upon inquiry her supervisor was informed by her doctor that she was under treatment for a manic-depressive illness.

In May, 1979, Ms. Matzo was informally counselled with respect to her attendance and performance problems, but the pattern of disruptive behavior and poor attendance continued, and culminated in an official letter of warning to her on December 31, 1979. On January 8, 1980, Ms. Matzo abruptly left the office without permission and did not return. On January 18, 1980, OLL sent her a notice to report for a fitness-for-duty examination to which it received no response.[2] On February 21, 1980, it sent her a second letter, again with no response. On March 21, 1980, USPS issued her a notice of proposed removal from federal service, and, hearing nothing to suggest to the contrary, implemented the removal on April 10, 1980, effective April 28, 1980. So far as appears from the record, Ms. Matzo had neither returned to work nor made any formal response to OLL's correspondence by that date.

On May 24, 1980, however, Ms. Matzo administratively appealed her removal and simultaneously initiated an administrative EEO charge alleging race, sex and handicap discrimination, and retaliation for certain prior EEO activity. In December, 1980, shortly before a scheduled hearing on her administrative appeal, Ms. Matzo's then attorney, believing that she had full authority in the premises, reached a settlement agreement with counsel for USPS. The settlement agreement called for Ms. Matzo

[1]. OLL is an agency law office of 22–25 attorneys, staffed by eight secretaries who provided clerical services for several attorneys each.

[2]. On February 3, 1980, OLL was informed by plaintiff's sister that Ms. Matzo had voluntarily committed herself to a Maryland state mental hospital in mid-January, 1980. She remained hospitalized until March 19, 1980.

to withdraw her appeal and EEO complaint, in consideration of which the USPS would alter her employment records to reflect a resignation in lieu of removal, and offered to rehire her at a grade seven level if she were able to pass a fitness-for-duty exam. Both attorneys signed the settlement document; Ms. Matzo, however, rejected it.

Consequently, the EEO complaint, at least, proceeded to hearing and a decision.[3] The hearing officer rejected Ms. Matzo's claims of race and sex discrimination, and of retaliation, but he made a recommended finding of handicap discrimination in the Service's refusal to acknowledge the causal connection between Ms. Matzo's illness and her extensive absences, and to accommodate the former accordingly.

The final agency decision of the Service, however, issued on April 9, 1985, found no evidence of discrimination of any description by USPS, including handicap, and on November 24, 1986, the EEOC's Office of Appeals and Review affirmed that decision, crediting the USPS' valid, non-discriminatory reasons as justifying Ms. Matzo's removal, *viz.*, her insubordination, irregular attendance, and protracted absence without leave in the early months of 1980, notwithstanding her mental condition. Plaintiff now claims here only to be a victim of handicap discrimination.

## II.

■ Defendant first argues that all of plaintiff's claims were resolved by the 1980 settlement by which, it declares, plaintiff is bound. She responds—and the record supports her—that she did not authorize an agreement in advance, and firmly rejected it when informed of it by her then attorney, subsequently firing the attorney. Even if

the attorney genuinely believed in her own authority to negotiate the settlement, Ms. Matzo had the power to reject it unless she had, in fact, authorized it, and there is no evidence to that effect. Nor is there evidence that Matzo herself was responsible for any appearance of authority on the part of the attorney which may have deluded USPS (or its attorney) into believing that she was so authorized.

■ The case law cited by USPS establishes, at most, that there is a presumption of an attorney's authority to settle a case, and that an attorney may acquire that authority, if not expressly, then by implication from the totality of the attorney-client relationship. *See, e.g., Edwards v. Born, Inc.*, 792 F.2d 387, 389–91 (3rd Cir.1986). Plaintiff rebuts any such presumption, however, with her unequivocal denial that she ever, initially or otherwise, authorized a settlement without her assent to its terms. The cases cited by the Service enforcing settlement agreements negotiated by attorneys over the objection of a client all reflect a crucial distinction: in each there is proof that the client initially authorized a settlement upon terms offered (or terms left to the discretion of counsel), or that the client initially approved a proposed settlement and later had a change of mind.

## III.

■ In a handicap employment discrimination case under the Rehabilitation Act, the plaintiff has the burden of showing that she is a handicapped person, that she is "otherwise qualified" for the position at issue, and that she was excluded from the position solely because of that handicap.[4] *Doe v. New York University*, 666 F.2d 761 (2nd Cir.1981); *Guerriero v. Schultz*, 557 F.Supp. 511 (D.D.C.1983). USPS contends

---

3. The record reflects no disposition of the administrative appeal of her removal.

4. The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with handicaps in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency or by the United States Postal Service."

29 U.S.C. § 794 (1986). USPS does not dispute that plaintiff's mental condition qualifies her as a handicapped person.

29 C.F.R. § 1613.702(f) states that "a qualified handicapped person" is one who "with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others."

that plaintiff was not "otherwise qualified" within the meaning given that phrase by the courts having construed it, and that even if she were, she was not discharged *solely* because of her handicap, but, rather, for her insubordination, her peculiar behavior in the office, and her multiple protracted absences without leave. Finally, it says that it has extended her all the accommodation to be expected of it.

■ Plaintiff asserts that, despite her past derelictions, she is now, and was, as of late spring, 1980, in all respects "otherwise qualified." Her technical skills, experience, and education are unexceptionable, as demonstrated by her uniformly favorable performance appraisals prior to the onset of her illness. When healthy her attendance had been punctual and her behavior appropriate. Now that her illness, albeit a chronic and incurable one, is in remission under control, she can be expected to perform as before. She, of course, retains her "handicap;" she is, and presumably always will be, a manic depressive. But, properly medicated and with regular psychotherapy, she satisfies the "otherwise qualified" criterion of a job she had done proficiently for many years.[5]

Defendant insists that, as of the date of her termination, Ms. Matzo could not be considered as "otherwise qualified." A minimal and basic qualification for any job, it argues, is the ability to report for work and remain on duty for the duration of the workday, a capacity Ms. Matzo had notably lacked for virtually the entire first quarter of 1980, and, to lesser degree, for much of the preceding year.

■ The case law supports the defendant. In the leading case of *Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), the Supreme Court stated that an "otherwise qualified" employee must be "able to meet all of the program's requirements in spite of his handicap." *Id.* at 406, 99 S.Ct. at 2367. *See also Norcross v. Sneed*, 755 F.2d 113, 117 (8th Cir.1985); *Doe v. Region 13 Mental Health–Mental Retardation Comm'n*, 704 F.2d 1402 (5th Cir.1983); *Wimbley v. Bolger*, 642 F.Supp. 481, 485 (W.D.Tenn.1986); *Swann v. Walters*, 620 F.Supp. 741, 747 (D.D.C.1984); *Schmidt v. Bell*, 33 FEP Cases 839 (E.D.Pa.1983) [available on WESTLAW, 1983 WL 631]. In other words, a handicap which deprives a worker of an ability to fulfill an essential requirement of his craft can never be "otherwise qualified."

■ Plaintiff then invokes the duty of reasonable accommodation. There were, she says, alternatives to the ultimate sanction (and indignity) of dismissal available to OLL which would simultaneously have addressed its need for secretarial services during her convalescence and served as well the federal policy of the government's being a model employer of the handicapped. *See Whitlock v. Donovan*, 598 F.Supp. 126 (D.D.C.1984), *aff'd sub nom. Whitlock v. Brock*, 790 F.2d 964 (D.C.Cir. 1986). The obvious expedient, while she remained absent, was to hire temporary help, and once she had recovered sufficiently to return to work, if unable to resume all of her former duties, she could have been reassigned to a less demanding position. Firing her represented not only a failure of reasonable accommodation; it was no accommodation at all.

The argument, however, overlooks the reality. While Ms. Matzo was absent, OLL obviously did accommodate her. Someone, whether a temporary employee or her permanent co-workers, did the work she was expected to do. And whether she had recovered sufficiently, as of April, 1980, to return to work on any terms has never been established; the requests from USPS to plaintiff to submit to a fitness-for-duty examination have gone unheeded to the

---

**5.** To USPS' assertion that it did not terminate her "solely" because of her handicap, plaintiff responds that the argument is sophistry. Her behavior, the ostensible ground for her termi- nation, was indisputably attributable "solely" to her illness. The argument, she says, is the equivalent of saying that the illness was of no

present.[6]

Assuming, moreover, a continuing duty on USPS' part to accommodate plaintiff in some fashion once she protested her termination, the record discloses that defendant did, in fact, make a further effort to accommodate—it offered her the spurned settlement. The settlement, which plaintiff has steadfastly repudiated (and the Court has agreed does not bind her), contemplated converting her involuntary termination to a resignation. She would have been eligible to be rehired at a lower grade (with, presumably, less stressful job requirements) if found fit for duty when the long-deferred examination had been performed. Her prolonged absence without leave would have been forgiven, and her attendance record would have been credited with a substantial unearned sick leave allowance in advance.

The Court finds the settlement offered by USPS reflected both a good faith attempt to accommodate plaintiff's handicap, and, in fact, a reasonable accommodation. That plaintiff found it unacceptable does not alter its character as such. A handicapped employee cannot dictate the measure of his employer's duty to accommodate, and, having rejected the settlement, Ms. Matzo has waived her right to demand some other form of accommodation even if it, too, might have been reasonable.

For the foregoing reasons, therefore, it is, this 18th day of September, 1987,

ORDERED, that defendant's motion for summary judgment is granted, and the complaint dismissed with prejudice.

---

consequence, although its symptoms were fatal to her continued employment.

**6.** By August, 1982, however, Ms. Matzo had been employed as a GS–6 secretary by the Commodity Futures Trading Commission's Division of Enforcement.