Yvonne **EVANS**, Plaintiff,

v.

Samuel **SKINNER**, Secretary of Transportation, et al., Defendants.

**Civ. A. No. 89–0277 (CRR).**

United States District Court, District of Columbia.

Aug. 14, 1990.

T. Clarence Harper, Washington, D.C., for plaintiff.

Susan A. Nellor, Asst. U.S. Atty., with Jay B. Stephens, U.S. Atty., and John D. Bates, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

In February 1989 the plaintiff instituted this action, alleging, *inter alia,* violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* She retained J. Thomas Giunta, Esquire to represent her in this lawsuit. In the summer of 1989, Mr. Giunta asked the plaintiff if she would be willing to enter into settlement negotiations with the defendants. Plaintiff's Affidavit ¶ 2. She agreed provided she could participate in the negotiations. *Id.* Unbeknownst to the plaintiff, settlement negotiations took place from May through August of 1989, and counsel for the parties drafted a settlement agreement in September 1989.[1] The plaintiff saw the proposed settlement agreement for the first time in February 1990 and has firmly rejected it ever since. After an obvious breakdown in the attorney-client relationship, Mr. Giunta withdrew, and the plaintiff retained another attorney to represent her for the balance of these proceedings.

The defendants have filed a motion to enforce the settlement agreement, claiming that, although the plaintiff has not accepted the terms of this agreement, her attorney has bound her by acting within the scope of his authority and accepting it himself. The plaintiff opposes the enforcement of the settlement agreement by asserting that no agreement exists to be enforced because her attorney did not have authority, either actual or apparent, to enter into the agreement without her approval. Upon consideration of the defendants' motion, the plaintiff's opposition, the underlying law, and the entire record herein, the Court holds that the parties never entered into a binding, enforceable settlement agreement.

■ It is well-settled that an attorney may not settle a client's claim without specific authority to do so. *See, e.g., United States v. Beebe,* 180 U.S. 343, 351–52, 21 S.Ct. 371, 374, 45 L.Ed. 563 (1901) (attorney does not receive an implied power to settle a client's claim simply because his or her services have been retained); *Golden Panagia S.S., Inc. v. Panama Canal Comm'n,* 791 F.2d 1191, 1198 n. 5 (5th Cir.1986) (unauthorized settlement agreement is void and unenforceable); *Ashley v. Atlas Mfg. Co.,* 7 F.R.D. 77, 77 (D.D.C. 1946) ("an attorney has no right, without special authority, to make a compromise for his client"), *aff'd,* 166 F.2d 209 (D.C.Cir. 1947); *see generally* Annotation, "Authority of Attorney to Compromise Action," 30 A.L.R.2d 944 (1953 & Supps. 1981 & 1990) (rule is almost universal that attorney may not settle action without special authority from client).

### I. Actual Authority

■ The defendants claim that Mr. Giunta had actual authority to settle this case.

---

1. A friend from work informed the plaintiff of the settlement agreement in early September of 1989. The friend approached her in a restaurant and stated, "I hear your case has been settled and there will be no trial." Plaintiff's Affidavit ¶ 6.

Actual authority (express or implied) is scrutinized under a "reasonableness" standard and "can be created by written or spoken words or other conduct of the principal, which reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Restatement (Second) of Agency § 26. To determine whether such actual authority exists, two issues must be examined: the authority that the client explicitly gave to the attorney (express actual authority) and the totality of the attorney-client relationship (implied actual authority). *Edwards v. Born, Inc.*, 792 F.2d 387, 391 (3d Cir.1986).

■ Because the attorneys for both parties appeared for a settlement conference with "full authority to discuss settlement," the defendants claim that this indicates the authority of plaintiff's counsel to settle the case. *See* Defendants' Reply to Plaintiff's Opposition at 3. However, even if the plaintiff had given her former attorney authority to discuss settlement without her participation, "discussing" settlement and "entering" into a binding, enforceable final agreement are two distinct actions. *Cf. Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1010 (4th Cir.1981).

Further claiming that the plaintiff's former attorney was authorized to settle her claim, the defendants point out that at a subsequent status conference, he stated, "And I thought, to the best of my knowledge, that I had authority and that I acted within that authority." Defendants' Motion to Enforce Settlement Agreement at 4. However, even if an attorney genuinely believes in his or her own authority to negotiate a settlement, the client retains the right to reject it provided the settlement was not authorized. *Matzo v. Postmaster General*, 685 F.Supp. 260, 262 (D.D.C.1987), *aff'd*, 861 F.2d 1290 (D.C.Cir. 1988). The attorney's "belief" must be "reasonable" based on the client's communications and in light of the totality of the attorney-client relationship. *See Edwards*,

792 F.2d at 391. Here, the plaintiff never authorized her attorney to enter into a settlement agreement. To the contrary, she authorized him to enter into "negotiations." [2] Under these circumstances, the Court holds that it was unreasonable for plaintiff's counsel to conclude that the plaintiff had given him full authority to settle this case.

Nor does the totality of the attorney-client relationship support a finding of implied actual authority. The relationship between the plaintiff and her former attorney was less than harmonious with little communication from either side regarding settlement. For example, the plaintiff's former attorney rarely returned the plaintiff's calls. In fact, they only spoke about settlement on two occasions: when she informed him in the summer of 1989 that she wanted to participate in any negotiations and in June 1989 when she inquired about her case and he simply stated that he was waiting to hear from the Justice Department. Having been unable to speak with her counsel to confirm rumors that her case had settled, the plaintiff eventually threatened to report her former attorney to the Bar. He finally returned her calls after approximately three months of apparently avoiding her. Ultimately Mr. Giunta's co-counsel began handling the case. *See* Plaintiff's Affidavit ¶¶ 3, 5, 7, 8, 9. Having examined the totality of the attorney-client relationship, the Court holds that the plaintiff's conduct should not have led her former attorney to reasonably believe he had actual authority to enter into a binding settlement agreement without her prior approval. *See* Restatement (Second) of Agency § 26.

## II. Apparent Authority

Because it is clear that the plaintiff's former attorney did not have actual authority to settle her claim, the issue becomes whether her attorney was acting pursuant to his apparent authority when he attempt-

---

**2.** It is undisputed that "Mr. Giunta asked plaintiff during the summer of 1989 if she would be interested in *negotiating* a possible settlement of

her case with the defendants. She replied yes, if she could participate in the negotiations." Plaintiff's Affidavit ¶ 2 (emphasis added).

ed to settle the claim. Apparent authority has been described as:

> "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with *the other's manifestations* to such third persons." Restatement (Second) of Agency § 8 (1958). Further, in order to create apparent authority, the *principal must manifest to the third party* that he "consents to have the act done on his behalf by the person purporting to act for him." *Id.* at § 27.

*Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir.1989) (emphasis in original). Moreover, the United States Court of Appeals for this Circuit has recognized that "[a]s a matter of law, for apparent authority to exist, there must be some conduct on the part of the *principal* to give rise to the inference of the agent's authority." *Drexel Burnham Lambert v. Commodity Future's Trading Comm'n*, 850 F.2d 742, 753 (D.C.Cir.1988) (Starr, J., concurring in part and dissenting in part) (emphasis in original); *see also Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d 1412, 1416, 1417 (D.C.Cir.1983) (per curiam) ("apparent agency depends in large part upon the representations made to the third party"; "creation and termination of apparent authority rests with the principal").

■ Therefore, the "crucial question in ascertaining whether apparent authority has been created is whether the principal has made representations concerning the agent's authority to the third party." *Edwards*, 792 F.2d at 390. In other words, as actual authority centers on the manifestations of the principal *to the agent*, apparent authority focuses on the manifestations of the principal *to the third party. See id.* at 389–90.

■ The defendants have only recited communications from the plaintiff's former *attorney* stating his belief that he had authority, but it is clear that an "agent cannot *by his own acts* imbue himself with apparent authority," *Fennell*, 865 F.2d at 503 (emphasis added), nor may attorneys

"commit their clients simply by communicating boldly with each other," *International Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 58 (2d Cir.1979). Furthermore, the mere appearance of an attorney at a status call without the client does not necessarily give rise to an inference of apparent authority. *See Fennell*, 865 F.2d at 502 ("[The plaintiff] made no manifestations to defendants' counsel that [his attorneys] were authorized to settle the case. [That they represented the plaintiff], and that they were authorized to appear at conferences for him, [does] not prove otherwise."). The defendants have failed to single out any actions of the *principal*—the plaintiff—that led them to believe her attorney had authority to settle this case.

This case is factually similar to *Matzo*, in which a member of this Court refused to enforce a purported settlement agreement. *Matzo v. Postmaster General*, 685 F.Supp. 260 (D.D.C.1987), *aff'd*, 861 F.2d 1290 (D.C. Cir.1988). In both cases the plaintiff "did not authorize an agreement in advance, and firmly rejected it when informed of it by her then attorney." *Id.* at 262. Further, in both cases there was no "evidence that [the client] was responsible for any appearance of [settlement] authority ... which may have deluded [the defendant] into believing that [plaintiff's counsel] was so authorized." *Id.* Finally, here, as in *Matzo*, the

> cases cited by the [defendants] enforcing settlement agreements negotiated by attorneys over objection of a client all reflect a crucial distinction: in each there is proof that the client initially authorized a settlement upon terms offered (or terms left to the discretion of counsel), or that the client initially approved of a proposed settlement and later had a change of mind.

*Id.*

■ It is also significant that in this case the proposed settlement agreement contains a line for the plaintiff's signature which has remained blank since the document was drafted.[3] Although a lawyer is

---

3. The defendants assert that this should be treat-   ed as an oral settlement agreement that need

entitled to make decisions on his or her own that do not directly affect the merits of a case, " 'otherwise, the authority to make decisions is exclusively that of the client.... As a typical example in civil cases, it is for the client to decide whether he will accept a settlement offer.' " *Edwards*, 792 F.2d at 391 (quoting Ethical Consideration 7–7 of the *ABA Code of Professional Responsibility* ). In other words, while an attorney may be the only one to sign papers related to procedural matters, some sign of the client's acceptance is necessary for a settlement agreement to take affect. *See Valley Line Co. v. Ryan*, 771 F.2d 366, 376 (8th Cir.1985). Clearly, the plaintiff's signature would "convey[ ] a clear message of intention to settle." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir.1989).

The defendants' last contention is that the plaintiff's only recourse should be to sue her former attorney for legal malpractice. The Second Circuit disposed of this argument and reasoned persuasively that "[c]lients should not be faced with a Hobson's choice of denying their counsel all authority to explore settlement or being bound by *any* settlement to which their counsel might agree, having resort only to an action against their counsel for malpractice." *Fennell*, 865 F.2d at 503 (emphasis in original).

For the foregoing reasons, and especially in light of the importance of the protections that Congress afforded employees by enacting Title VII, this Court declines to force upon the plaintiff a purported settlement "agreement" entered into by her former attorney without her knowledge or consent.

The Court will issue an Order of even date herewith in accordance with the foregoing Memorandum Opinion.

## ORDER

In accordance with the Court's Memorandum Opinion of even date herewith, it is, by the Court, this 13th day of August, 1990,

ORDERED that the defendants' Motion to Enforce Settlement Agreement shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that, as soon as the business of the Court permits, the Court shall schedule a status call and shall so notify the parties.

---

not have been reduced to writing, therefore eliminating the need for a signature. However, for such an agreement to be enforced the client must either enter into it knowingly and voluntarily or have authorized the attorney to enter

into the agreement. *See, e.g., Taylor v. Gordon Flesch Co.,* 793 F.2d 858, 862 (7th Cir.1986); *Glass v. Rock Island Refining Corp.,* 788 F.2d 450, 455 (7th Cir.1986). As discussed herein, neither of these situations exists on this record.